UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASSER ALJALHAM,

    Plaintiff,

v.

AMERICAN STEAMSHIP COMPANY,

    Defendant and
    Third-Party Plaintiff,

v.

ALLOUEZ MARINE SUPPLY,

    Third-Party Defendant.
_____/

No. 08-14043
Hon. Gerald E. Rosen
Mag. Donald A. Scheer

**OPINION AND ORDER REGARDING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit,
Michigan on   March 4, 2010

PRESENT: Honorable Gerald E. Rosen
               Chief Judge, United States District Court

### I. INTRODUCTION

This Jones Act action is before the Court on Defendant/Third-Party Plaintiff American Steamship Company and Third-Party Defendant Allouez Marine Supply's Motions for Summary Judgment, to which the parties have responded and replied. Having reviewed the parties' written submissions in support of and opposition to

Defendants' motions, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendants' motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTS

This case arises out of an alleged back injury Plaintiff Nasser Aljalham suffered on September 27, 2005, when he carried and set down a box of groceries in the galley of Defendant American Steamship Company's ship, M/V American Spirit. Plaintiff is a seaman who worked for American Steamship Company (ASC) as a crew member and second cook since 2000.

The alleged injury occurred while Plaintiff was performing his duties on the American Spirit. As a second cook, Plaintiff typically assisted in taking and storing weekly grocery supplies into the galley after they were delivered to the ship by a shore-side grocery supplier. On the date in question, Plaintiff was handed a box of meat stuffs by a fellow crewmember, Salim Yahya. The groceries had been purchased from Allouez Marine Supply (AMS), one of ASC's suppliers. The weight of the box was estimated at somewhere between 65 and 92 pounds.[1] Yahya testified that it was common practice to

---

[1] Plaintiff testified that when he checked the box the day after the incident, it weighed over 90 pounds. (Pl. Dep. 65:15-20, Feb. 25, 2009.) The accident report filled

2

warn other crew members if a box was particularly heavy when handing it off. (Yahya Dep. 7:22-25, July 7, 2009.) However, the parties dispute whether Yahya actually gave Plaintiff a warning in this particular instance. Yahya testified that he could not remember whether he had warned Plaintiff, but in the same breath stated that he was sure he mentioned it was heavy. (Yahya Dep. 8:6-10.) Plaintiff testified both that he could not recall whether Yahya had said anything and that Yahya did not provide a warning. (*Compare* Pl. Dep. 75:19-23, 76:19-21, Feb. 25, 2009, *with* Pl. Dep. 107:11-16, Oct. 29, 2009.)

After being handed the box, Plaintiff carried it approximately six to ten feet before setting it down on the floor next to the refrigerator in the galley. He immediately felt a "pinch" in his back and thereafter had difficulty standing up or moving about. With the permission of the ship steward, he went to the hospital for treatment the same day. Plaintiff was ultimately diagnosed with having a disc herniation. He claims that he was rendered "temporarily disabled and unable to attend to his usual and ordinary affairs." (Compl. ¶ 9.)

---

out after the incident also indicated that the box weighed approximately 90 pounds. (ASC Mot. for Summ. J. Ex. A.) However, the steward on duty at the time of the accident, Mark Hosey, estimated the weight at 65 pounds, based on his review after the incident of the box's contents: 40 pounds of ground beef and two rib eye loins totaling 25-27 pounds. (Hosey Dep. 37:4-10, Apr. 27, 2009.) He acknowledged that the box may have contained other products that had been removed in the interim. (Hosey Dep. 37:21-24.) The box was not labeled as weighing in excess of 40 pounds.

3

Almost ten years before the incident, ASC had circulated recommendations to its grocery suppliers concerning the risks of packing heavy boxes. These recommendations were outlined in a memorandum sent by Tom Anderson, ASC's former safety administrator and current assistant vice president for fleet operations, to the ASC purchasing department. The memorandum stated:

> I want to emphasize the importance of limiting the weight of grocery parcels. A large number of ASC's lost time injuries are lower back, soft tissue injuries which result from exertion. Lifting heavy loads is a prime cause. When groceries are delievered, galley personnel frequently must lift heavy items (meats in particular) which may cause such injuries.
>
> These injuries pose significant liability and all parties involved (ASC, vessel supervisors, vendors, etc.) should do their utmost to eliminate such incidents.
>
> It would certainly be beneficial if you would communicate the importance of limiting the weight of grocery parcels to vendors. I suggest a maximum weight of 40 lbs. per item (box, carton, container, etc.). If this is not possible the heavy item should be clearly marked with a warning.

(Pl. Resp. to ASC Mot. for Summ. J. Ex. F.) Following receipt of this memo, the purchasing department issued its own memorandum to vendors, forwarding Anderson's recommendations. In the months and years that followed, Anderson testified that he monitored compliance with these recommendations by speaking to stewards on ASC's vessels during routine visits. Where boxes were still being delivered over the recommended weight, Anderson would contact those vendors by phone to ensure that they were following the recommendations of either packing lighter packages or labeling heavy ones. He testified that "[as] as general rule, the vendors were pretty good about

[compliance] and they are pretty good about it today." (Anderson Dep. 37:14-16.) Anderson further testified that he did not recall whether his memorandum and the monitoring process were precipitated by a specific incident or incidents.

On September 19, 2008, Plaintiff filed suit against ASC for his injuries. The complaint alleges that ASC is liable for negligence under the Jones Act and for the unseaworthiness of the M/V American Spirit under general admiralty law because of the company's unsafe loading practices. It also alleges wrongful denial of maintenance and cure. On August 4, 2009, ASC filed a third-party complaint pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, bringing in Third-Party Defendant Allouez Marine Supply (AMS), the supplier of the boxed groceries. Plaintiff did not amend his complaint to include AMS and does not assert any claims directly against AMS.

### III. ANALYSIS

#### A. Rule 14(c) Impleader

Defendant/Third-Party Plaintiff ASC impleaded Third-Party Defendant AMS under Federal Rule of Civil Procedure 14(c), seeking indemnity and/or contribution in ASC's favor, and demanding judgment in Plaintiff's favor against AMS. Plaintiff has challenged the propriety of the Rule 14(c) impleader in lieu of responding separately to AMS Motion for Summary Judgment. He argues that Rule 14(c) is not applicable where Plaintiff's complaint alleges claims outside admiralty and does not make any explicit Federal Rule of Civil Procedure 9(h) designation.

Before reaching the merits of Plaintiff's argument, the Court notes with no small

measure of frustration that Plaintiff has waited until the dispositive motion stage of this case to raise this issue, after months of protracted discovery and procedural fumbling by the parties. The Court first set a briefing schedule for the case over a year ago in November 2008. In May 2009, *five days after the discovery cut-off had passed*, ASC filed a perfunctory Motion for Leave to File Third Party Complaint, claiming that it had "discovered" that the boxed groceries were from AMS, one of its suppliers. Citing ASC's delay as "both substantial and prejudicial," the Court denied ASC's motion. See Dkt. #16. ASC subsequently filed a Motion for Reconsideration, which was again denied by the Court, finding that ASC was using the motion to raise "new arguments that could have been (but were not) pursued before the Court issued its challenged ruling." See Dkt. #18. On July 30, 2009, the parties appeared before the Court for a Final Pre-trial Conference. Counsel for both parties were wholly unprepared to effectively participate in discussion of settlement and other pre-trial matters as required by local court rules. See Local Rule 16.1(c), U.S. District Court, Eastern District of Michigan. The Court, intent on moving the case forward, agreed to issue an Amended Scheduling Order to allow the parties to resolve outstanding discovery issues, narrowly focused on Plaintiff's medical condition. At the conference, ASC again raised the issue of filing a third-party complaint. Only then did the Court permit ASC to implead AMS, in light of the re-opened discovery window. These delays form the backdrop for this latest procedural setback.

Third-party practice in the federal courts is governed by Rule 14 of the Federal Rules of Civil Procedure. In general, impleader is intended "to promote economy by

avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him." American Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) (quoting 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1441 (2d ed. 1990)).[2] Rule 14(a) governs third-party practice in general, while Rule 14(c) applies exclusively to claims that have been formally designated as sounding in admiralty or maritime law. Fed. R. Civ. P. 14(a), 14(c); see also Rosario v. American Export-Isbrandtsen Lines, Inc., 531 F.2d 1227, 1231 n.10 (3d Cir. 1976) ("[W]e recognize that rule 14(c) is not exclusive of, but rather supplemental to rule 14(a) and that rule 14(c) must be interpreted by reference to rule 14(a)."). Rule 14(c) specifically provides:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. . . . The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

Fed. R. Civ. P. 14(c). Rule 9(h) in turn provides that a complaint asserting an admiralty claim along with other claims, as is the case here (where there are unseaworthiness,

---

[2] Leave to implead a third-party defendant, under Rule 14, is within the discretion of the court. General Elec. Co. v. Irvin, 274 F.2d 175, 178 (6th Cir. 1960).

maintenance and cure, and Jones Act claims), "may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims." Fed. R. Civ. P. 9(h). "Although an express citation in the complaint to Rule 9(h) is not always required to invoke admiralty jurisdiction, the complaint or other pleadings must evidence the plaintiff's intent to invoke the special procedures of admiralty jurisdiction." Lipscomb v. Indiana Gaming Co., L.P., 194 F.3d 1313 (6th Cir. 1999) (Table).

> The purpose is to enable the plaintiff to notify his opponent and the court that he's invoking those rules, Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir. 1988); Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1252-54 (5th Cir. 1975), when, having another basis for federal jurisdiction, he could just rely on the ordinary civil rules. If he doesn't so indicate, by means of the statement or otherwise, Wingerter v. Chester Quarry Co., 185 F.3d 657, 665-68 (7th Cir. 1999) (*per curiam*); Foulk v. Donjon Marine Co., 144 F.3d 252, 256 (3d Cir. 1998); Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991) (*per curiam*), the case proceeds under the ordinary civil rules.

Greenwell v. Aztar Indiana Gaming Corp., 268 F.3d 486, 493-94 (7th Cir. 2001); see also 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3677 (3d ed.).

In this case, Plaintiff did not employ an "identifying statement" asserting his claim as an admiralty or maritime claim in accordance with the federal civil rule. Instead, he asserted two concurrent jurisdictional bases: under the Jones Act and under common maritime law. The Jones Act provides for remedies at law and confers general federal question jurisdiction on the federal courts, independent from the assertion of admiralty

8

jurisdiction. Marmac, LLC v. Reed, 232 F.R.D. 409, 413 n.9 (M.D. Fla. 2005). Accordingly, there is an alternative basis for jurisdiction over this action and impleader under Rule 14(c) was improper.

Before dismissing the Third-Party Complaint, the Court notes two peculiarities of the procedural posture of this case. First, Third-Party Defendant AMS does not oppose the impleader and neither AMS nor Plaintiff has filed a Motion to Strike the Third-Party Complaint. On the contrary, AMS filed an Answer to ASC's Third-Party Complaint, and the parties proceeded to conduct additional discovery over the course of several months to accommodate the late addition of the Third-Party Defendant. Although AMS initially included an objection to admiralty jurisdiction in its Answer, it subsequently abandoned this defense upon filing its Motion for Summary Judgment by defending against both ASC's Third-Party Complaint claim and Plaintiff's original Complaint, as required under Rule 14(c). Moreover, in its reply to Plaintiff's response to the Motion for Summary Judgment, AMS argues that Plaintiff's original Complaint should be construed as sounding in admiralty and that the 14(c) impleader should be permitted to move forward. The sole party that has raised an objection to the impleader is Plaintiff, who arguably stands to gain from Rule 14(c)'s broader provisions and whose substantive rights do not appear to be affected by the impleader.

The second peculiarity of the improper Rule 14(c) impleader is that ultimately ASC does not attempt to shift all of the alleged liability onto AMS—that is, it does not avail itself of Rule 14(c)'s creation of a "direct relationship" between Plaintiff and Third-

9

Party Defendant. Instead, ASC's Motion for Summary Judgment is almost exclusively premised on a theory of Plaintiff's comparative negligence. As the Seventh Circuit Court of Appeals explained in a similar fact situation, where the third-party plaintiff is not attempting to shift liability entirely onto the third-party defendant, the impleader can just as easily be made under Rule 14(a). See Greenwell, 268 F.3d at 494.

> [T]he significance of Rule 14(c) is that it permits the plaintiff to obtain relief directly from the third-party defendant, cutting out the middleman, the third-party plaintiff. If the third-party plaintiff . . . is not seeking to bow out, but is content to remain the middleman, paying the plaintiff if [he] obtains a judgment and then turning around and seeking reimbursement from the third-party defendants, rather than, as Rule 14(c) permits, substituting the third-party defendants . . . for itself, it can use Rule 14(a), the ordinary impleader rule. Rule 14(c) drops out of the picture, see In re Oil Spill by Amoco Cadiz, 699 F.2d 909, 913 (7th Cir. 1983), and with it any concern related to Rule 9(h), to which Rule 14(a) naturally does not refer. And Rule 14(a) can be used in admiralty suits as well as in ordinary federal civil suits. Seal Offshore, Inc. v. American Standard, Inc., 777 F.2d 1042, 1045 (5th Cir. 1985); McCune v. F. Alioto Fish Co., 597 F.2d 1244, 1246 (9th Cir. 1979).

Id. By all appearances, ASC is content to remain the middleman and AMS may be properly impleaded under Rule 14(a).

In spite of these observations—that AMS does not oppose the impleader and that ASC could have impleaded AMS pursuant to Rule 14(a)—the Court is still left with the problem of a procedurally flawed Third-Party Complaint: ASC explicitly captioned its Third-Party Complaint as filed "pursuant to Rule 14(c)." Moreover, because the Third-Party Complaint forms the predicate for AMS's Motion for Summary Judgment, that motion is not properly before this Court. Based on the foregoing, the Court will dismiss

the Third-Party Complaint and deny AMS's Motion for Summary Judgment. Insofar as AMS has already answered the Third-Party Complaint and conducted discovery accordingly, the Court assumes that AMS has no objection to an amendment of Plaintiff's Third-Party Complaint, reformulating it under Rule 14(a).[3] The Court thus grants leave for Defendant/Third-Party Plaintiff ASC to cure the procedural defect created by its failure to file a proper third-party complaint under the correct federal rule within ten days of the date of this Opinion and Order. If ASC fails to file an amended third-party complaint within this time frame, the Court will not entertain any additional motions to bring in AMS as a third party.

**B.     Defendant/Third-Party Plaintiff ASC's Motion for Summary Judgment**

   **1.  The Standards Governing ASC's Motion**

Through its Motion for Summary Judgment, Defendant/Third-Party Plaintiff ASC seeks dismissal of Plaintiff's Jones Act and maritime law claims under Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

---

   [3]  This "reformulation" necessarily mandates that ASC drop its demand of judgment in Plaintiff's favor against AMS because this type of demand is solely available under Rule 14(c).

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In deciding a motion brought under Rule 56, the Court views the evidence in a light most favorable to the nonmoving party. Pack v. Damon Corp., 434 F.3d 810, 813 (6th Cir.2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." Pack, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

The Sixth Circuit has expressed its "reluctance to dispose of Jones Act claims through summary judgment." Daughenbaugh v. Bethlehem Steel Corp., 891 F.2d 1199, 1207 (6th Cir. 1989) ("[E]ven marginal claims are properly left for jury determination."). The court has further explained that "we are mindful of the policy of providing expansive remedies for seamen who are injured while acting in the course of their employment and recognize that the submission of Jones Act claims to a jury requires a very low evidentiary threshold." Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 903 (6th

Cir. 2006) (internal quotations omitted). Thus, a plaintiff must offer "more than a scintilla of evidence" in order to create a jury question on the issue—"but not much more." Id.

> 2. **Plaintiff Has Presented Sufficient Evidence to Support a Claim of Negligence Under the Jones Act.**

The Jones Act, 46 U.S.C. § 30104, provides: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104 (formerly cited as 46 U.S.C. § 688). The Act incorporates the rights afforded to railway employees under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.* FELA provides in pertinent part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

Jones Act plaintiffs alleging negligence must provide proof of both duty and breach. Perkins v. Am. Elec. Power Fuel Supply, Inc., 246 F.3d 593, 598 (6th Cir. 2001), *cert denied*, 534 U.S. 994 (2001). Duty is determined under the "ordinary prudence" standard applicable in common law negligence claims. Id. An employer breaches its duty where it fails "to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known."

13

Rannals v. Diamond Jo Casino, 265 F.3d 442, 449 (6th Cir. 2001) (citing Perkins, 246 F.3d at 599 ("It is a fundamental principle that, under the Jones Act, an employer 'must have notice and the opportunity to correct an unsafe condition before liability will attach.'")). To establish causation a plaintiff need only show that the employer's negligence "played any part, however slight, in producing" the alleged injuries. Perkins, 246 F.3d at 598. Finally, because the comparative negligence doctrine applies in maritime law claims, any negligence on the part of the employee serves only to mitigate damages, "unless his negligence is the sole cause of his injuries." Id.

In this case, Plaintiff alleges that ASC breached its duty by failing to maintain safe loading practices. Specifically, Plaintiff claims that fact issues remain with respect to whether Plaintiff was properly warned that the box was heavy, whether he had an opportunity to avoid carrying the box, and whether the warning constitutes a sufficiently safe loading practice. ASC maintains that any injury Plaintiff suffered resulted solely from his own failure to behave as a prudent seaman in that Yahya's testimony tends to indicate that he warned Plaintiff that the box was heavy, but Plaintiff nevertheless opted to carry it by himself.

The Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether ASC breached its duty to maintain a safe workplace. The company was clearly on notice that unloading boxes in excess of 40 pounds created a potential danger of back injury to crew members. While ASC may have attempted to establish safety procedures that would eliminate such risks, the facts are disputed as to

whether these procedures were uniformly enforced or in of themselves sufficient.[4]

Although Tom Anderson testified that he worked with ship stewards and suppliers to ensure that boxes of groceries were packed lighter or more clearly labeled, it is unclear to what extent this was actually an enforced protocol since neither guideline appears to have been followed in this case. Moreover, even if testimony in the record indicated that the general practice on the ship was to warn crew members of a particularly heavy box before handing it off, and assuming such oral warnings are sufficient to avoid potential injuries, the record is still inconclusive as to whether Plaintiff was actually warned on this occasion. Finally, the fact that Plaintiff could have asked for help in lifting the box but did not speaks to his comparative negligence—it does not absolve ASC of its potential negligence in maintaining safe loading practices.[5] For these reasons, the Court will deny ASC's Motion for Summary Judgment on Plaintiff's Jones Act negligence claim.

**C.    Plaintiff Has Failed to Present Sufficient Evidence to Satisfy the Higher**

---

[4] In support of his position, Plaintiff has submitted the testimony of Dr. Robert Andres, Ph.D., relating to the ergonomical and biomechanical aspects of the incident. ASC has filed a Motion in Limine to strike this expert testimony from the record; it is currently pending before the Court. For purposes of the present motions for summary judgment, the Court notes that a jury does not generally need expert testimony to conclude that ASC's failure to maintain safe loading practices rendered Plaintiff's work environment unsafe. However, even without Dr. Andres's testimony, Plaintiff has presented sufficient evidence to create a genuine issue of material fact.

[5] Fact questions also remain as to whether Plaintiff could have realistically been helped by other crew members, where Plaintiff testified that Yahya had already turned away when Plaintiff realized the box was heavy and the record is inconclusive as to where the steward was relative to Plaintiff at the moment Plaintiff was handed the heavy box.

**Causation Requirement for Liability Under the Unseaworthiness Doctrine.**

Unseaworthiness is a cause of action distinct from Jones Act negligence. Mahnich v. Southern S. S. Co., 321 U.S. 96, 101, 64 S. Ct. 455 (1944). A ship owner owes an absolute, non-delegable duty to maintain a seaworthy ship. Perkins, 246 F.3d at 602. "A vessel is unseaworthy if the vessel and its appurtenances are not 'reasonably fit for their intended use.'" Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 904 (6th Cir. 2006) (quoting Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S. Ct. 926 (1960)). "Defective gear, an unfit or understaffed crew, or the use of an improper method of storage or unloading cargo all render a vessel unseaworthy." Id. (quoting Morales v. City of Galveston, 370 U.S. 165, 170, 82 S. Ct. 1226 (1962)). The Sixth Circuit has also held that "a vessel need not be 'free from all possibility of mishap, for the seaworthiness of a ship is a relative concept, dependent in each instance upon circumstances.'" Perkins, 246 F.3d at 602 (quoting Brown v. Dravo Corp., 258 F.2d 704, 706 (3d Cir. 1958)). In Morales, for example, the Supreme Court reviewed a case in which longshoremen taking on a cargo of wheat from a pierside grain elevator were injured from noxious insecticide fumes released in the closely confined area on the ship where they were working. 370 U.S. at 166. The Court found that while unseaworthiness may be found in an improper method of loading cargo, or the manner of its stowage, there was no unseaworthiness where "[w]hat caused injury . . . was not the ship, its appurtenances, or its crew, but the isolated and completely unforeseeable introduction of a noxious agent from without." Id. at 171. Indeed, the Sixth Circuit has held that a claim of unseaworthiness carries a higher

16

causation requirement: "A plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Miller v. American President Lines, Ltd., 989 F.2d 1450, 1463 (6th Cir. 1993) (quoting Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir.), *cert. denied*, 488 U.S. 968, 109 S. Ct. 497 (1988)).

In this case, the Court finds that there is insufficient evidence from which Plaintiff can show that the loading practices rose to the level of being unseaworthy, or indeed, that the loading practices themselves played a substantial part in bringing about the alleged injury. Rather, the record describes a single incident of operational negligence, which does not itself establish unseaworthiness. See Franklin v. Doric Shipping & Trading Corp., 357 F. Supp. 1132, 1135 (W.D. La. 1972) (holding that where previously satisfactory method of loading vessel was rendered unsafe because of the negligent act of plaintiff and/or fellow employees, the act during its commission was "operational negligence" and, since that negligence did not render the vessel instantaneously unseaworthy, the vessel owner was not liable for the accidental injury sustained by plaintiff); Smith v. Olsen & Ugelstad, 324 F. Supp. 578, 582 (E.D. Mich. 1971) (holding that survivor of deceased longshoreman could not recover from shipowner where longshoreman's death was caused by "instant unseaworthiness resulting from the operational negligence of the stevedoring contractor or his servants"). In addition, the mere suggestion that better or safer loading methods could have been implemented is

17

insufficient to support Plaintiff's claim of unseaworthiness, where nothing in the record indicates that carrying boxes onto the ship and handing them off is unseaworthy as a general practice. See Reed v. MV Foylebank, 415 F.2d 838, 839 (5th Cir. 1969) (holding that although loading vessel could have been done with a forklift or made easier by using other equipment, failure to use mechanical devices and use of hand hooks to load 1,100 pound crates onto vessel did not render vessel unseaworthy).

Plaintiff relies almost exclusively on the Sixth Circuit decision, Churchwell v. Bluegrass Marine, Inc.. In Churchwell, the plaintiff, a cook on a ship, incurred an injury while cleaning the kitchen. 444 F.3d at 902. The plaintiff was pouring grease from a skillet into a coffee can, as instructed by another crew member. Id. When she picked up the coffee can with one hand to move it across the counter, it slipped from her fingers onto the floor. Id. The plaintiff then took a step backwards into the spilled grease and fell, sustaining serious back injuries. Id. The Sixth Circuit found that, even if the way in which the plaintiff picked up the coffee can contributed to her injury, there was sufficient evidence to create a genuine issue of material fact as to whether the absence of grease mats and a container with a handle rendered the ship unseaworthy. Id. at 904. By contrast, in this case, safety procedures and policies were in place that would render loading groceries or other packages reasonably safe. The only issue, as discussed above, is whether these policies were enforced or followed in this instance. Plaintiff has submitted no evidence that the equipment or lack of equipment on the ship itself rendered loading groceries unseaworthy. Accordingly, the Court will enter summary judgment on

Plaintiff's unseaworthiness claim.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant/Third-Party Plaintiff American Steamship Company's Third-Party Complaint [**Dkt. #24**] is DISMISSED.

IT IS FURTHER ORDERED that Defendant/Third-Party Plaintiff ASC may file an Amended Third-Party Complaint within *ten (10) days* of the date of this Opinion and Order. Third-Party Defendant Allouez Marine Supply will then have *ten (10) days* within which to file its answer to the Amended Third-Party Complaint. Finally, AMS will then have an additional *ten (10) days* within which to file a new Motion for Summary Judgment should it so choose.

IT IS FURTHER ORDERED that Third-Party Defendant Allouez Marine Supply's Motion for Summary Judgment [**Dkt. #41**] is DENIED.

IT IS FURTHER ORDERED that Defendant/Third-Party Plaintiff American Steamship Company's Motion for Summary Judgment [**Dkt. #38**] is GRANTED IN PART, as to Plaintiff's claim of unseaworthiness, and is otherwise DENIED.[6]

---

[6] Defendant/Third-Party Plaintiff American Steamship Company's Motion for Summary Judgment does not address Count III of Plaintiff's Complaint, which seeks maintenance and cure under general maritime law. For that reason, it is not discussed separately here. Having dismissed Plaintiff's claim of unseaworthiness, the case proceeds on Plaintiff's claims for both negligence (Count I) and maintenance and cure (Count III).

IT IS FURTHER ORDERED that Plaintiff Nasser Aljalham's claim of unseaworthiness is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated: March 4, 20100

s/ Gerald E. Rosen
Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 4, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137