**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NASSER ALJALHAM,

    Plaintiff,                                      No. 08-14043
                                                   Hon. Gerald E. Rosen
v.                                                    Mag. Donald A. Scheer

AMERICAN STEAMSHIP COMPANY,

    Defendant and
    Third-Party Plaintiff,

v.

ALLOUEZ MARINE SUPPLY,

    Third-Party Defendant.
_____/

**OPINION AND ORDER REGARDING
ALLOUEZ MARINE SUPPLY'S MOTION TO STRIKE
AMERICAN STEAMSHIP'S THIRD PARTY COMPLAINT**

                      At a session of said Court, held in
                      the U.S. Courthouse, Detroit,
                      Michigan on   April 29, 2010  

                      PRESENT:   Honorable Gerald E. Rosen
                                                   Chief Judge, United States District Court

## I. INTRODUCTION

       This Jones Act case is before the Court on Third-Party Defendant Allouez Marine Supply's Motion to Strike Defendant/Third-Party Plaintiff American Steamship Company's Amended Third-Party Complaint. American Steamship Company has filed a response in opposition. Having reviewed the parties' written submissions in support of

and opposition to Allouez Marine Supply's motion, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendants' motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This otherwise unremarkable case has the dubious distinction of having a remarkably protracted procedural history. Because the Court has detailed the salient facts in prior orders, it will simply summarize them here. Plaintiff Nasser Aljalham filed this suit on September 19, 2008 against his employer, American Steamship Company (ASC). He claims that the back injury he suffered on an ASC ship on September 27, 2005, while employed as a crewmember and second cook, was a result of ASC's negligent acts or omissions. Specifically, Plaintiff claims that he was injured while unloading a box of groceries because the box was too heavy and/or he was not properly warned or provided sufficient aid in moving it.

After the close of discovery, ASC sought to join Allouez Marine Supply (AMS) as a third-party defendant. AMS was the supplier of the boxed groceries. ASC alleges that, because AMS failed to either pack the groceries under recommended weight guidelines or label the box as heavy, it was partly or wholly responsible for Plaintiff's injury. After denying ASC's requests twice, the Court eventually permitted ASC to file a third-party

2

complaint in the context of a re-opened discovery period.  ASC filed a Third-Party Complaint, impleading AMS on August 18, 2009.  The Court extended the re-opened discovery to December 14, 2009.  In January 2010, AMS and ASC filed motions for summary judgment.  Upon reviewing the motions, the Court found that ASC's Third-Party Complaint was procedurally defective insofar as it was filed pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.  As the Court explained in its March 4, 2010 Order and Opinion, Rule 14(c) applies exclusively to claims that have been formally designated as sounding in admiralty or maritime law under Rule 9(h) of the Federal Rules of Civil Procedure.  Because Plaintiff's Complaint, which raised both Jones Act and maritime law claims, did not formally designate the claims as sounding in admiralty or maritime law, the Court concluded that impleader was only appropriate under Rule 14(a), which governs general impleader.  Based on this finding, the Court ordered the Third-Party Complaint dismissed, but granted ASC leave to file an Amended Third-Party Complaint, reformulating its claims under Rule 14(a) "to cure the procedural defect." (Dkt. # 55.)  ASC filed the Amended Third-party Complaint on March 12, 2010.  Through the present motion filed on March 22, 2010, AMS seeks to have the Amended Third-Party Complaint stricken.[1]

---

[1] AMS also filed a Motion for Summary Judgment (Dkt. # 60) on April 1, 2010.  Two motions *in limine* (Dkt. #39, 40) filed by ASC in January are pending.

## III. ANALYSIS

A.   **Standards Applicable to Third-Party Defendant's Motion**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the action of striking a pleading should be used sparingly by the courts, motions to strike are generally granted where the allegations are clearly immaterial to the controversy or would prejudice the movant. Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953). Ultimately, the decision to strike a pleading is firmly within the discretion of the court. Ameriwood Industries Intern. Corp. v. Arthur Andersen & Co., 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (citing cases). Furthermore, pursuant to Rule 14(a)(4) of the Federal Rules of Civil Procedure, "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).

B.   **The Amended Third-Party Complaint Shall Not Be Stricken Because It Restates Allegations Made in the Original Complaint, Albeit in Greater Detail.**

The original Third-Party Complaint in this action was seven paragraphs long. It alleged, *inter alia*, that:

> if the Plaintiff has suffered any loss or injury as a result of the incident of September 27, 2005, the loss was proximately caused by the failure of the agents, representatives, and employees of Third-Party Defendant to properly perform the duties and obligations imposed upon it, and said loss, if any was proximately caused by conditions or circumstances for which the Third-Party Defendant is liable and responsible.

4

(Third-Party Compl. ¶ 5.) ASC also sought contribution and/or indemnification. The First Amended Third-Party Complaint, filed after this Court found the original Third-Party Complaint procedurally defective, is twenty-seven paragraphs long and sets out in greater detail three separate counts for negligence, contribution and <u>Ryan</u> indemnity. AMS claims that the Amended Complaint exceeds the scope of the Court's leave "to cure the procedural defect." While ASC has clearly exploited its own procedural misstep to refine and elaborate on its original Third-Party Complaint, the Court declines to strike the pleading for the reasons set forth below.

AMS argues that ASC's Amended Complaint should be stricken for adding claims and theories against AMS that were not alleged in the original Third-Party Complaint. Specifically, AMS contends that it will be prejudiced if ASC's Amended Complaint is allowed to stand since "[n]o discovery was conducted into the issue of whether AMS was negligent as this was not a theory alleged against AMS until the filing of the amended third-party complaint." (AMS Mot. to Strike 3.) In addition, AMS argues that it has conducted no discovery into the <u>Ryan</u> indemnity claim. ASC counters that the Amended Complaint merely "'repackaged' the [negligence] claim for clarity's sake." (ASC Resp., Br. in Support 4.) ASC further argues that the <u>Ryan</u> indemnity claim is the same relief sought in the original Complaint.

With respect to the negligence allegations in ASC's Amended Third-Party Complaint, the Court finds that AMS was sufficiently on notice during the discovery period that it would have to defend against allegations of negligence. Although AMS did

not use the term "negligence" in the original Third-Party Complaint, negligence could be inferred from ASC's allegations that Plaintiff's injury was proximately caused by AMS's failure to "properly perform the duties and obligations imposed upon it." Moreover, because the Third-Party Complaint was brought under Rule 14(c), ASC's original Third-Party Complaint incorporated all of Plaintiff's claims for negligence—irrespective of the fact that Rule 14(c) was an improper procedural mechanism for impleader. That is, ASC sought judgment against AMS in favor of Plaintiff, effectively transferring Plaintiff's negligence allegations onto AMS, as is uniquely permitted under Rule 14(c). Thus, Plaintiff's allegations, combined with ASC's allegations, which sound in negligence, were well known to AMS during the discovery period. AMS had ample opportunity to explore the factual issues surrounding its alleged duty, breach and negligence vis-à-vis both Plaintiff and ASC. It will not be prejudiced if ASC's lengthier and more detailed allegations outlining the nature of the alleged negligence are permitted to stand.

With respect to ASC's claims for Ryan indemnity, the Court similarly finds that the underlying claim of indemnity is the same as was stated in simpler terms in the original Third-Party Complaint. In maritime and admiralty cases, the common law rule of joint and several liability applies, such that concurrent tortfeasors are each liable in full for the damages sustained by a tort claimant. Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 260, 99 S. Ct. 2753, 2756 (1979), *reh'g denied*, 444 U.S. 889, 100 S. Ct. 194 (1979). Contribution requires each torfeasor to pay its proportional share, while indemnity permits one party to shift the entire amount of the loss (including

attorneys' fees) from one party to another. In admiralty, parties may seek three kinds of indemnity: contractual indemnity, implied contractual indemnity under the Ryan doctrine, or tort indemnity. 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 5-18 (4th ed.)[2] In the original Third-Party Complaint, ASC stated only that it sought "indemnity," but it did not specify the legal nature of that request. It has now narrowed its allegations to Ryan indemnity, specifically alleging that AMS owes ASC a duty to perform its work in a "workman like manner." The Court finds that it does not unduly prejudice AMS to

---

[2] Ryan indemnity is a doctrine that was established by the Supreme Court in a 1956 landmark decision, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S. Ct. 232 (1956). The doctrine was developed in part to address the messy intersection of two loss-allocation mechanisms: strict liability for unseaworthiness claims against shipowners under general maritime law and the workers' compensation scheme established for longshoremen through the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). In Ryan, which involved a longshoreman injured in the course of unloading a ship, the Court considered whether the shipowner, which was liable for damages on the longshoreman's claim of unseaworthiness, could seek indemnity from the longshoreman's employer, a stevedoring company. The longshoreman had already collected the statutorily limited award from his employer for his injuries and was barred from suing the employer directly for either negligence or unseaworthiness. The Court found that the shipowner could collect from the stevedoring company on a theory that the latter had breached an implied warranty of workmanlike performance in the stevedoring contract. Id. at 133. Federal courts went on to apply this doctrine to a wide variety of marine contracts—including contracts to perform services, repair ships, and other offshore service contracts. 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 5-8. However, subsequent Supreme Court decisions and 1972 amendments to the LHWCA significantly reduced the application of the Ryan doctrine. Id. In spite of these changes, the Ryan doctrine has never been directly overruled. The Sixth Circuit has applied the Ryan doctrine in Jones Act personal injury actions. See Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 364-65 (6th Cir. 1986). Yet, the court has declined to apply the doctrine where the key elements—a shipowner liable without fault for a seaman's personal injuries and harm caused by a stevedoring or marine services contractor with which the shipowner has a relationship—are absent. See Phillips Petroleum Co. v. Stokes Oil Co., Inc., 863 F.2d 1250, 1256-58 (6th Cir. 1988).

permit these allegations to stand. AMS had the opportunity to explore indemnity issues—whether contractual, implied under the Ryan doctrine or tort-based—during the extended discovery period. Moreover, the newly refined allegations in the Amended Third-Party Complaint limit ASC's theory of indemnity and thus potentially work in AMS's favor.

AMS further argues that Ryan indemnity is unavailable to ASC as a matter of law. First, AMS contends that ASC's claim of indemnity and/or contribution does not sound in maritime or admiralty law and thus Ryan indemnity, which is a maritime law doctrine, is inapplicable. Second, AMS argues that Ryan indemnity is solely available to shipowners seeking indemnification from stevedores, wharfingers, dock owners or other similar marine services contractors. AMS argues that it does not qualify as such a marine services contractor and thus cannot be found liable for indemnification under the Ryan indemnity doctrine. ASC counters that because the nature and character of the contract between ASC and AMS is related to a maritime service, admiralty law applies. It does not address AMS's arguments with respect to the applicability of the Ryan indemnity doctrine to a grocery supplier.

The Court finds that admiralty law governs ASC's claim of contribution and/or indemnity from ASC. Where the underlying action raises question of general maritime or admiralty law, maritime rather than state law controls claims of contribution and/or indemnity. See Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 363-65 (6th Cir. 1986) (affirming magistrate judge's finding that maritime law controls shipowner's claim of

8

indemnity and that the Ryan indemnity doctrine applies, even where underlying action was a Jones Act case, but reversing decision to award indemnity because magistrate improperly considered comparative fault); Sims v. Chesapeake & Ohio Railway Co., 520 F.2d 556, 560 (6th Cir. 1975).  This Court's finding that Plaintiff did not invoke admiralty jurisdiction for purposes of Rule 14(c) impleader does not render maritime law inapplicable in adjudicating the contribution and indemnity claims—particularly where those claims are premised on Plaintiff's underlying allegations brought concurrently under the Jones Act and general maritime law.

Finally, the Court finds that AMS is not unduly prejudiced by the invocation of Ryan indemnity, even if the applicability of the doctrine in this context is perhaps doubtful.  AMS has raised several difficult questions regarding the application of Ryan indemnity to it as a shore-based supplier of groceries and whether there are any claims under which ASC may be found liable *without fault*.  However, although these arguments may ultimately be valid, they are best addressed in a motion for judgment on the record as a whole, rather than in the context of a motion to strike a pleading, particularly where the parties have not sufficiently briefed the issues in the present motion.  Finally, the Court finds that AMS has not shown that ASC's Ryan indemnity pleadings constitute "redundant, immaterial, impertinent, or scandalous matter," warranting the severe act of striking the pleading from the docket.

## IV. CONCLUSION

For all the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Third-Party Defendant's March 22, 2010 motion to strike Defendant/Third-Party Plaintiff's amended third-party complaint [Dkt. #57] is DENIED.

        s/Gerald E. Rosen
        Gerald E. Rosen
        Chief Judge, United States District Court

Dated: April 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2010, by electronic and/or ordinary mail.

        s/Ruth A.Gunther
        Case Manager
        (313) 234-5137