**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NASSER ALJALHAM,

    Plaintiff,                                    No. 08-14043
                                            Hon. Gerald E. Rosen
v.                                            Mag. Donald A. Scheer

AMERICAN STEAMSHIP COMPANY,

    Defendant and
    Third-Party Plaintiff,

v.

ALLOUEZ MARINE SUPPLY,

    Third-Party Defendant.
_____/

**OPINION AND ORDER REGARDING ALLOUEZ MARINE SUPPLY'S
MOTION FOR SUMMARY JUDGMENT**

                               At a session of said Court, held in
                               the U.S. Courthouse, Detroit,
                               Michigan on       July 12, 2010

                               PRESENT:   Honorable Gerald E. Rosen
                                                      Chief Judge, United States District Court

## I. INTRODUCTION

        This Jones Act case arises from a back injury Plaintiff Nasser Aljalham purportedly suffered while lifting a box on a ship. Plaintiff brought this action against the shipowner, his employer, American Steamship Company, which in turned filed a third party complaint against the supplier of the box, Allouez Marine Supply. The case is

presently before the Court on Allouez Marine Supply's Second Motion for Summary Judgment.[1]  The motion has been fully briefed.

Having reviewed the parties' written submissions in support of and opposition to the motion, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion.  Accordingly, the Court will decide the motion "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL HISTORY

Because the facts of this case have been set forth in detail in earlier opinions, they will only be briefly outlined here.  In September 2005, Plaintiff Nasser Aljalham was serving as a second cook in the galley of the M/V American Spirit.  He was employed by American Steamship Company (hereinafter "ASC").  Among Plaintiff's duties and assignments was assisting in unloading groceries into the galley kitchen after they had been delivered to the vessel by an outside supplier.

---

[1] Pursuant to Local Rule 7.1(b)(2), a party "must obtain leave of court to file more than one motion for summary judgment."  Local Rule 7.1(b)(2), U.S. District Court, Eastern District of Michigan.  Allouez Marine Supply did not seek leave of this Court before filing the present motion.  It was filed after the Court granted American Steamship Company leave to file an Amended Third Party Complaint.  Despite this apparent violation, the Court will consider the motion since Rule 7.1(b)(2) is primarily concerned with parties attempting to challenge several counts of a single complaint through separate motions.  Here, Allouez Marine Supply's first Motion for Summary Judgment primarily addressed Plaintiff's Complaint, while the present motion addresses the claims in the Amended Third Party Complaint.

2

On the day of the events in this case, September 27, 2005, boxed groceries were delivered to ship. They were packed by and originated from Allouez Marine Supply (hereinafter "AMS"). Salim Yahya, a co-worker of the Plaintiff, carried boxes from the deck of the ship to the galley door. Yahya handed off one particularly heavy box to Plaintiff.[2] There were no labels on the box indicating that it was heavy.[3] Yahya later testified that it was his practice to tell co-workers if a box was particularly heavy before handing it off, but he did not recall specifically if he had warned Plaintiff in this instance.

Once Plaintiff had the box, he noticed that it was heavy but did not ask for help or attempt to put it down right away. Plaintiff carried the box across the galley (eight to ten

---

[2]  Plaintiff testified that when he checked the box the day after the incident, it weighed over 90 pounds. (Pl. Dep. 65:15-20, Feb. 25, 2009.) The accident report filled out after the incident also indicated that the box weighed approximately 90 pounds. (ASC Mot. for Summ. J. Ex. A.) However, the steward on duty at the time of the accident, Mark Hosey, estimated the weight at 65 pounds, based on his review after the incident of the box's contents: 40 pounds of ground beef and two rib eye loins totaling 25-27 pounds. (Hosey Dep. 37:4-10, Apr. 27, 2009.) He acknowledged that the box may have contained other products that had been removed in the interim. (Hosey Dep. 37:21-24.) The box was not labeled as heavy.

[3]  The parties dispute whether ASC had a policy or requirement that its vendors pack boxes below a threshold weight (40 pounds) or label them as "heavy." The record indicates that in a 1996 internal ASC memorandum, Tom Anderson, ASC's former safety administrator and current assistant vice president for fleet operations, told the ASC purchasing department to "communicate the importance" to the vendors of packing lighter boxes or of labeling them as heavy. (ASC Resp. to AMS Second Mot. for Summ. J., Ex. 3.) Following receipt of this memo, the purchasing department issued its own memorandum to vendors, forwarding Anderson's recommendations. In the memo to vendors, Wendy Yorio, an employee of ASC's purchasing department wrote: "Tom has asked that I convey our concerns to each of you and to respectfully request cooperation in limiting the weight on all grocery parcels. Tom has suggested maximum of 40 lbs. which I believe is a reasonable limitation in most cases." (*Id.*) Separately, Anderson testified that it was his practice in the months and years that followed to monitor compliance with these recommendations by speaking to stewards on ASC's vessels during routine visits.

feet) and then put it down on the floor. He immediately felt a pain in his back.[4] Later visits to a doctor indicated that he had suffered a central disc herniation. He claims that the injury caused him physical pain and mental anguish, and rendered him temporarily disabled and unable to attend to his usual and ordinary affairs. He further claims that he suffered a loss of earnings and earning capacity, and that he incurred medical expenses.

Plaintiff filed this lawsuit against ASC on September 19, 2008. Specifically, he alleges that ASC is liable to him under the Jones Act for negligent acts, including but not limited to:

> a) failing to provide a vessel which was safe for those required to work on and around said vessel and to prevent against the unseaworthiness of said vessel;
>
> b) failing to discover, inform and warn those required to be in the area, and Plaintiff, Nasser Aljalham, in particular, of the latent and/or patent defects and/or dangerous conditions then and there existing on said vessel;
>
> c) failing to correct such latent and/or patent defects and/or dangerous conditions which defendant knew, or in the exercise of reasonable care should have known, presented an unreasonable risk of injury to persons on the vessel;
>
> d) failing to provide sufficient staffing so that incoming supplies, and more specifically groceries, provisions and/or foodstuffs, could be moved safely;
>
> e) failing to hire careful, competent and knowledgeable employees to perform work who knew, or in the exercise of reasonable care should have known, that the grocery provisions and other supplies were extremely weighty and required additional men to carry same;
>
> f) failing to properly instruct and supervise the employees it did hire so that those required to work on said vessel would work without being placed in danger of injury;

---

[4] Plaintiff later explained that he did not put the box down because no one was immediately available and putting it down right away would have caused the same injury as carrying it across the galley and putting it down.

> g) failing to require and/or insure that the groceries, provisions and/or supplies were packaged, boxed or otherwise gathered in a reasonably safe weight and configuration;
>
> h) failing to provide pull carts or other appropriate devices to minimize and/or eliminate the necessity of lifting the grocery provisions and supplies, and to otherwise minimize excessive and unnecessary effort to properly transport the provisions;
>
> i) failing to provide adequate manpower and/or assistance for Plaintiff to do his job safely;
>
> j) failing to assign Plaintiff to work that was within his physical capacity.

(Compl. ¶ 7.) Plaintiff separately seeks maintenance and cure under general maritime law.[5] On August 18, 2009, ASC filed a Third-Party Complaint against AMS, alleging that the supplier was liable in whole or in part for Plaintiff's injuries. In an Amended Third-Party Complaint filed March 12, 2010, ASC alleges more specifically that: (1) AMS was negligent when it failed to properly limit the weight of the box or to mark the box as exceeding 40 pounds; (2) should ASC be found liable for any damages incurred by the Plaintiff, it is entitled to contribution from AMS for its proportional share of the damages; and (3) AMS had an obligation to perform its work in a workman-like manner but failed to do so and therefore owes ASC indemnity under the *Ryan* indemnity doctrine.

## III. ANALYSIS

### A. STANDARDS APPLICABLE TO THIS MOTION

Through the present motion, AMS seeks summary judgment in its favor on each of the claims set forth in ASC's Amended Third-Party Complaint. Under the pertinent

---

[5] Plaintiff originally also sought relief under a theory of unseaworthiness. This claim was dismissed. (*See* Dkt. # 55.)

federal rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As explained by the Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In deciding a motion brought under Rule 56, the evidence must be viewed in a light most favorable to the nonmoving party. *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (alteration, internal quotation marks, and citation omitted).

In the alternative, AMS seeks dismissal of ASC's third-party claims pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) authorizes this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." However, AMS's motion is accompanied by certain exhibits. In the event that the Court elects to consider matters outside the pleadings in resolving AMS's motion, it must treat the motion "as one for

6

summary judgment under Rule 56" and afford all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In this case, the Court considers the evidence outside the Third-Party Complaint and notes that ASC has had ample opportunity to respond to these additional matters. Accordingly, the motion will be "treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

**B.     NEGLIGENCE**

To establish a *prima facie* claim of negligence, a plaintiff must show: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered injury; and (4) that the breach caused the injury. *Henry v. Dow Chem. Co.*, 473 Mich. 63, 71-72, 701 N.W.2d 684 (2005). Here, the parties dispute whether AMS owes ASC a duty of care and if so, whether there is sufficient evidence in the record to indicate that that duty was breached.

1.  Duty of Care

The threshold inquiry in negligence actions is whether a defendant owed the plaintiff a duty. *Brown v. Brown*, 478 Mich. 545, 739 N.W.2d 313 (2007). Whether a duty exists is a question of law for the Court; it is determined by considering whether the relationship between the parties imposes upon the defendant a legal obligation for the benefit of the plaintiff. *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977). In determining whether to impose a duty, the Court evaluates factors such as: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. *Murdock v. Higgins*, 454 Mich. 46, 53, 559 N.W.2d

639, 642 (1997) (citing *Buczkowski v. McKay*, 441 Mich. 96, 100, 490 N.W.2d 330 (1992)); *see also Krass v. Tri-County Sec., Inc.*, 233 Mich. App. 661, 669-70, 593 N.W.2d 578 (1999). A legal duty "may arise specifically by mandate of statute, or it may arise generally [under] the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v. Dalman*, 379 Mich. 251, 261, 150 N.W.2d 755, 760 (1967).

In this case, AMS argues that it had no duty to pack the boxes lighter or to label boxes as heavy. Alternatively, AMS argues that if any duty was formed by the purchase orders between AMS and ASC and the requests from AMS to pack boxes lighter than 40 pounds or label them, such duty sounds in contract, not in tort. AMS then argues that a claim arising out of a contract is not actionable in negligence, *Hart v. Ludwig*, 347 Mich. 559, 79 N.W. 2d 895 (1956), and no contract claim is alleged in ASC's Amended Complaint. ASC counters that it had earlier requested that all of its suppliers, including AMS, appropriately mark any box it delivered to the ship that weighed in excess of 40 pounds. ASC contends that this alone establishes a duty of care, which arises out of AMS's negligent performance of its contract with ASC. Because AMS delivered a box that weighed well over 40 pounds and did not label the box, ASC argues that it breached that duty.

AMS's relationship to Plaintiff Aljalham was as a supplier to a shipworker likely to handle those supplies; no direct contractual relationship exists. Nevertheless, the company could have reasonably foreseen that the boxes it delivered to the ship would be

lifted and moved by ASC's agents or employees. The relationship between AMS, ASC and Plaintiff is sufficient to impose a duty on AMS. Moreover, there is nothing in the record to indicate that an obligation to safely pack the boxes it delivers to the ship is not unduly burdensome. Finally, the nature of the risk presented—i.e., lower back or soft tissue injuries resulting from excessive exertion in lifting the boxes—is both foreseeable and easily remedied by different packaging practices. Accordingly, the Court finds that AMS owed ASC and Plaintiff a duty to safely package its groceries.

2. Proximate Cause

ASC must also produce evidence sufficient "to prove a causal connection between defendant's conduct and plaintiff's injuries," *Hartsfield v. United Tech. Otis Elevator Co.*, 985 F. Supp 449, 452 (E.D. Mich. 1997), both cause in fact and legal or proximate cause. Cause in fact requires a showing that but for the defendant's negligent conduct, the harm or injury to the plaintiff would not have occurred. *Craig v. Oakwood Hospital*, 471 Mich. 67, 684 N.W.2d 296, 309 (2001); *Skinner v. Square D Co.*, 445 Mich. 153, 516 N.W.2d 475, 479 (1994). Proximate cause involves examining the foreseeability of consequences and whether the defendant may be held legally responsible for such consequences. *Haliw v. City of Sterling Heights*, 464 Mich. 297, 627 N.W.2d 581, 588 (2001).

Here, AMS argues that its failure to label the box or to pack the box lighter was not the proximate cause of Plaintiff's injury. In support of this position, AMS submits evidence that: Plaintiff admitted that he did not look at the labels of boxed groceries (Aljalham Dep. 110:1-111:11); Yahya told Plaintiff that the box was heavy before

9

handing it off to him (Yahya Dep. 7:22-8:14); Plaintiff admitted that he felt the box was heavy when he took it from Yahya but had no trouble handling it (Aljalham Dep. 112:22-113:11) (Yahya also testified that he had no trouble carrying the box); and Plaintiff continued to carry it and did not ask for help because he did not think immediately that it was that heavy (Aljalham Dep. 114:6-115:22). In addition, AMS points out that it was not clear that the back injury Plaintiff suffered on September 27, 2005 was directly caused by lifting this box, since Plaintiff had a prior back injury from a separate incident that could have been aggravated from lifting even a light package. ASC counters that Plaintiff's testimony that he did not read the box labels is inconclusive, since it refers more specifically to whether Plaintiff knew the contents (e.g., beer versus meat) rather than whether he looked at it to know that it was heavy. (Aljalham Dep. 111:7-11, 134:10-135:3.)[6] ASC does not address the other portions of the testimony, including the apparent admission that Plaintiff carried the box thinking he could handle it, rather than immediately put it down or call for help. Plaintiff testified that the difficulty he had was in putting it down, not in actually carrying the box. (Aljalham Dep. 112:17-25.)

A reasonable trier of fact could conclude that AMS's conduct was at least one proximate cause of Plaintiff's injury where it was foreseeable that ship workers would lift, carry and put down the boxed groceries it delivered to the ship. At this stage of the proceedings, the Court views the record in the light most favorable to ASC and finds that there is sufficient evidence from which the following may be inferred: that the boxes of

---

[6] ASC argues that if the Court finds that the failure to warn/label was not the proximate cause, evidence of a need for a label should be precluded from trial.

groceries being loaded onto the ship from AMS on September 27, 2005 included a box weighing somewhere between 65 and 92 pounds; that this box was not labeled as heavy; that ASC had earlier requested that all of its suppliers package boxes under 40 pounds or indicate if boxes weighed over 40 pounds; that it was questionable whether Yahya warned Plaintiff that the box was heavy before handing it off and whether Plaintiff really had an opportunity to request Yahya or others for assistance prior to feeling the acute pain in his back; and that Plaintiff felt the pain in his back immediately after setting down the particularly heavy box that originated from AMS. A jury could conclude that in Plaintiff's condition, after unloading multiple boxes, carrying them across the galley and setting them on the floor, the lifting of one 65 to 92 pound box, without prior warning from Yahya and without a label on the box, overtaxed him and resulted in the back injury. The box from AMS was almost twice the recommended ASC guideline. A jury could alternatively conclude that Plaintiff eschewed the opportunity to seek help or to avoid lifting heavy objects despite his prior back injury and thereby directly caused a back injury or simply aggravated his pre-existing condition, independent of the packaging or labeling of this particular AMS box. Ultimately, because reasonable minds could differ with regard to the proximate cause of Plaintiff's injury, the Court will deny ASC's Motion for Summary Judgment on this basis.

## C. CONTRIBUTION

Next, ASC argues that because AMS may be liable for the injuries incurred by Plaintiff Aljalham the parties share common liability and, therefore, ASC is entitled to contribution. Under maritime law, the Supreme Court has held that liability "is to be

allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault." *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411, 95 S. Ct. 1708 (1975); *see also Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457, 1459-63 (6th Cir. 1993) (rejecting the active-passive distinction as inequitable in a comparative fault system under maritime law).[7] This principle of comparative fault has been applied to

---

[7] There appears to be some confusion among the parties as to whether ASC's Third-Party Complaint sounds in admiralty or general jurisdiction. The parties further conflate this inquiry with the inquiry as to which substantive law to apply to ASC's contribution and indemnity claims.

As an initial matter, the source of a court's subject matter jurisdiction may not always be dispositive on the question of what substantive law to apply. *In re M/V Rickmers Genoa Litigation*, 643 F.Supp.2d 553, 555 (S.D.N.Y. 2009). Nevertheless, federal maritime law is usually applied when a federal court's maritime jurisdiction is invoked. *Id.*; *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619 (1996). In this case, the Court found that Plaintiff did not formally invoke the Court's maritime jurisdiction, but instead relied on general federal question jurisdiction in his Complaint, at least for purposes of Rule 14 third party practice. This finding did not foreclose the possibility of applying federal maritime and admiralty law to the underlying claims.

In the context of the present motion, ASC argues that federal maritime law should apply to its claims for contribution and indemnity because they arise from the negligent performance of a "maritime contract." (ASC's Resp. to AMS's Mot. for Summ. J. 3) (citing *Detroit Trust Co. v. Thomas Barlum*, 293 U.S. 21, 74 S. Ct. 202 (1934); *North Pacific Co. v. Hull Brothers Marine Railroad & Shipbuilding Co.*, 242 U.S. 119, 37 S. Ct. 58 (1919)). AMS argues that Michigan law applies for purposes of establishing a right to indemnification because the Court previously found that Plaintiff's Complaint does not sound in admiralty for purposes of third-party practice under Rule 14. (Dkt. # 55.). In *National Enters v. Smith*, 114 F.3d 561, 565 (6th Cir. 1997), the Sixth Circuit held that where a court "exercises its admiralty jurisdiction, that court must apply admiralty law rather than state law, to the case before it." AMS argues that the logical corollary is that when a court *declines* to exercise admiralty jurisdiction, it must apply state law.

combined Jones Act and general maritime law claims. *Miller*, 989 F.2d at 1462. In addition, where a shipowner whose negligence contributed to a seaman's injury pays maintenance and cure benefits to the seaman, the shipowner is entitled to contribution for maintenance and cure from a third-party joint tort-feasor whose negligence also contributed to the injury. *Adams v. Texaco, Inc.*, 640 F.2d 618, 621 (5th Cir. 1981).

Having found that ASC may proceed with its claim of negligence against AMS, the Court finds that ASC may also seek contribution from AMS under the foregoing comparative fault principles.

**D.** *RYAN* **INDEMNITY DOCTRINE**

In addition to seeking contribution, ASC seeks indemnity from AMS under the *Ryan* indemnity doctrine. AMS argues that this doctrine is inapplicable insofar as AMS is not a typical marine contractor or stevedoring company and the purchase agreements for groceries from ASC did not create an implied warranty of workmanlike service.

In *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S. Ct. 232 (1956), the Supreme Court created an indemnity doctrine specific to maritime law claims in order to address a perceived inequity in personal injury law at the time. As this

---

The Court finds that the application of general maritime law to ASC's claims of contribution and indemnity is appropriate, in spite of Plaintiff's failure to formally invoke admiralty jurisdiction in the underlying Complaint. The Sixth Circuit has routinely relied on general maritime principles of contribution and indemnity in Jones Act cases, describing the Jones Act as a kind of federal maritime statute. *See Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993). Here, AMS has cited no case law and this Court has found none to support the argument that because Plaintiff did not designate his claims has sounding in maritime jurisdiction under Fed. R. Civ. P. 9(h) the Court should refrain from applying substantive maritime and admiralty law to the claims in ASC's Amended Third Party Complaint.

Court explained in an earlier opinion in this action (*see* Dkt. 65, n.2), *Ryan* involved a plaintiff longshoreman who was injured while unloading cargo from a ship. The plaintiff, who had already collected the statutorily limited award from his employer under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), filed a lawsuit against the shipowner. The shipowner in turn filed a third-party complaint against the plaintiff's employer, the stevedoring contractor, which had loaded the ship under agreement to perform all the shipowner's stevedoring operations. The Supreme Court held that the shipowner, who was liable for damages while the stevedore enjoyed immunity from liability, could recover on an indemnity theory from the stevedore. To reach this conclusion, the Supreme Court found that an implied warranty of workmanlike service attached to the stevedoring contract, even though the contract lacked an express agreement of indemnity.

Since its creation, *Ryan* indemnity, or more specifically the warranty of workmanlike performance, has evolved into "one of the most ambiguous and controversial concepts in all of admiralty law." 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 5-8 (4th ed.). The *Ryan* indemnity doctrine was curtailed by subsequent amendments to the LHWCA, but also expanded by federal courts to cover personal injuries suffered by seamen and claims of indemnity against wharfingers or other marine contractors. *Smith & Kelly Co. v. S.S. Concordia TADJ*, 718 F.2d 1022, 1027-28 (11th Cir. 1983) (tracking rise and fall of the *Ryan* indemnity doctrine).[8] While the warranty

---

[8] In 1972, Congress eliminated the application of the doctrines of unseaworthiness and indemnification to longshoremen, by amendment to the Longshoremen's and Harbor

remains very much alive as between parties with contractual privity or on a third party beneficiary theory in maritime law, its application more broadly outside this context is "withered" or extremely limited. *Id.* In the context of seamen's personal injury cases, the Courts of Appeals disagree as to the applicability of the *Ryan* indemnity doctrine: the Fifth and Eleventh Circuits apply comparative fault contribution, *Hardy v. Gulf Oil Corp.*, 949 F.2d 826 (5th Cir. 1992), *Smith & Kelly Co. v. S.S. Concordia TADJ*, 718 F.2d 1022 (11th Cir. 1983), while in the Second, Third, Sixth, and Ninth Circuits it is still possible to recover *Ryan* indemnity in personal injury cases, *Cooper v. Loper*, 923 F.2d 1045 (3d Cir. 1991); *Oglebay Norton Co. v. CSX Corp.*, 788 F.2d 361 (6th Cir. 1986); *Campbell Indus., Inc. v. Offshore Logistics International, Inc.*, 816 F.2d 1401, (9th Cir. 1987). 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 5-8.

There is no case law in the Sixth Circuit extending *Ryan* indemnity to the factual circumstances presently before the Court—that is, implying a warranty of workmanlike conduct in a contract with a grocery supplier. ASC argues that the federal courts have continued to expand *Ryan* indemnity beyond the original stevedore context and that the Court should extend the doctrine here. ASC points out that a recent unpublished opinion from this district contemplated extending the warranty of workmanlike service "beyond the immediate contracting parties [to] foreseeable third parties." *Martin v. O-N Minerals Co.*, No. 08-14629-BC, 2009 WL 322045 (E.D. Mich. 2009). Here, however, the issue is not whether an implied warranty of workmanlike performance might be extended to

---

Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq*. However, federal courts, including those in the Sixth Circuit continued to apply implied warranty of workmanlike performance in cases where a seaman rather than a longshoreman has been injured.

Plaintiff. Rather, the issue is whether the Court should imply *any* warranty—whether owed to the shipowner or to third parties—in a series of purchase agreements for groceries. Nothing in the case law indicates that the doctrine was intended to apply beyond stevedore companies, wharfingers and other similar marine contractors to this attenuated context. The mere fact that AMS entered into purchase agreements with ASC to provide groceries for use aboard a ship—purchase agreements which are notably absent from the record—does not transform AMS into a marine contractor in the sense contemplated by *Ryan* and its progeny. Moreover, in *Ryan*, "the rationale for requiring stevedores to indemnify shipowners fully for injuries to longshoremen rested on the conclusion that, as a general matter, the stevedore is better positioned to avoid such injuries during cargo operations." *Smith & Kelly Co.*, 718 F.2d at 1028. Unlike a stevedore or wharfinger, a grocery supplier is not necessarily better positioned to avoid injuries during unloading of boxes. Accordingly, application of this doctrine is not warranted in this case and the Court will grant summary judgment on ASC's claim for *Ryan* indemnity.[9]

### E. DAMAGES

Finally, AMS seeks partial summary judgment on damages insofar as ASC is found liable for Plaintiff's failure to obtain a permanent position with ASC after the September 2005 incident. This request will be denied for the following reasons.

---

[9] AMS separately argues that it is entitled to summary judgment on ASC's claim for common law indemnity. However, ASC did not claim indemnity under the common law in the Amended Third-Party Complaint. Therefore, the Court need not address AMS's arguments on this issue.

Plaintiff has never claimed that he is seeking damages related to an alleged loss of a permanent position as a steward on the ship. Rather, ASC "anticipates" that Plaintiff will attempt to present testimony that he was "promised" a permanent Cook/Steward position by an ASC employee/agent and that two stewards were hired before him despite his alleged seniority. (Dkt. # 39, ASC's Mot. to Dismiss Pl.'s Claim.)[10] This conjecture is based on several statements Plaintiff made in deposition testimony, indicating that he was unhappy about his inability to secure a permanent position at ASC. Plaintiff went on to admit that he did not know whether this was in any way related to his back injury. AMS now argues that if Plaintiff succeeds in its claim of wrongful denial of a job, such a claim would amount to an intentional act, and any claim of contribution or indemnity with respect to this claim specifically would be inappropriate under Michigan law.

AMS's partial summary judgment claim is speculative on so many levels that it barely warrants addressing. Plaintiff has not asserted any claim arising from his apparent failure to secure a permanent position. Therefore, the possibility of Plaintiff being awarded damages on this non-existent claim is zero. Partial summary judgment on non-existent damages from a non-existent claim is wholly inappropriate.

## IV. CONCLUSION

For the reasons set forth above,

---

[10] ASC's Motion to Dismiss Plaintiff's Claim That He Was Denied A Permanent Position With ASC and/or To Preclude Plaintiff From Providing Certain Testimony is pending before the Court.

NOW, THEREFORE, IT IS HEREBY ORDERED that Allouez Marine Supply's April 1, 2010 Motion for Summary Judgment (Dkt. # 60) is GRANTED IN PART, with respect to American Steamship Company's claim for *Ryan* indemnity, and is otherwise DENIED WITH PREJUDICE.

s/ Gerald E. Rosen  
Gerald E. Rosen  
Chief Judge, U.S. District Court

Dated: July 12, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 12, 2010, by electronic and/or ordinary mail.

        s/Ruth A.Gunther  
        Case Manager  
          (313) 234-5137